1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO

2                         EASTERN DIVISION

3

    UNITED STATES OF AMERICA,

4

            Plaintiff,         Case No. 1:15CR268

5                            Akron, Ohio
          vs.                 Wednesday, June 20, 2018

6                            12:30 p.m.
    AMIR SAID RAHMAN AL-GHAZI,

7

            Defendant.

8

9             TRANSCRIPT OF SENTENCING HEARING

10          BEFORE THE HONORABLE SARA LIOI
             UNITED STATES DISTRICT JUDGE

11

12    APPEARANCES:

13    For the Government:  Matthew W. Shepherd
                      Office of the U.S. Attorney - Cleveland

14                   Carl B. Stokes U.S. Courthouse
                   801 Superior Avenue, West, Suite 400

15                   Cleveland, Ohio 44113
                   (216) 622-3600

16

    For the Defendant:   Lawrence J. Whitney

17                   Burdon & Merlitti
                   137 South Main Street, Suite 201

18                   Akron, Ohio 44308
                   (330) 253-7171

19

    Court Reporter:      Caroline Mahnke, RMR, CRR, CRC

20                   Federal Building & U.S. Courthouse
                   2 South Main Street, Suite 568

21                   Akron, Ohio 44308
                   (330) 252-6021

22

23

24    Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription.

25

1                    Wednesday, June 20, 2018

2            THE COURT:  Please call the case.

3            THE DEPUTY CLERK:  The case before the Court is

4    Case Number 1:15CR268, United States of America versus Amir

5    Said Rahman Al-Ghazi.

6            THE COURT:  All right.  Present this afternoon

7    are Assistant United States Attorney Matthew Shepherd

8    representing the United States of America, Attorney Lawrence

9    Whitney representing the defendant, and then the defendant,

10   Amir Said Rahman Al-Ghazi, himself is present.  We also have

11   supervising United States Probation Officer Brian Laffin

12   present.

13        So good afternoon to all.

14            MR. SHEPHERD:  Good afternoon, Your Honor.

15            MR. WHITNEY:  Good afternoon, Your Honor.

16            THE COURT:  Mr. Al-Ghazi was charged in a

17   28-count indictment, and he pleaded guilty to Counts 1, 2,

18   and 3 of the indictment.

19        In those counts he was charged as follows:

20        Count 1, attempting to provide material support and

21   resources to a designated foreign terrorist organization;

22   Counts 2 and 3, felon in possession of firearm and

23   ammunition.

24        The case today is set for sentencing.  The Court has

25   received and reviewed the presentence report as well as the

1    transcript of testimony provided to the Court.

2         Mr. Al-Ghazi, have you received and reviewed a copy of

3    the presentence report?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And counsel, I understand that you've

6    received a copy of the presentence report and that there are

7    no objections to the report.

8         Is this correct?

9              MR. SHEPHERD:  That's correct, none from the

10   government.

11             MR. WHITNEY:  None, Your Honor.  We had some

12   questions early on, but those have been corrected and I

13   think there are no further objections.

14             THE COURT:  Excellent.  Very well.

15        So the Court will accept the calculations in the

16   report relative to the advisory guideline sentencing range,

17   and the advisory sentencing guidelines range that will apply

18   in this case is a range of 188 to 235 months.

19        However, the parties have entered into a Rule

20   11(c)(1)(C) agreement, and there is a recommended sentence

21   in that agreement.

22        Is there any objection to the Court's, first of all,

23   advisory guideline sentence application and calculation?

24             MR. SHEPHERD:  No objection, Your Honor.

25             MR. WHITNEY:  None, Your Honor.

1          THE COURT:  All right.  The Rule 11(c)(1)(C)

2    agreement recommends that the Court impose a sentence of 192

3    months.

4          The Court had indicated at the time of the plea that

5    the Court was preliminarily excepting that plea agreement,

6    however, we are here today to conduct a sentencing hearing,

7    and I will hear the parties out and determine if that

8    binding recommendation still applies.

9          So with that, any objection to this procedure?

10          MR. SHEPHERD:  No, Your Honor.

11          MR. WHITNEY:  None, Your Honor.

12          THE COURT:  All right.  So as far as the

13    remainder of the sentencing options, those are set forth in

14    the report, and the Court will simply adopt the remainder of

15    the sentencing options noting that there is a $300 special

16    assessment that must be imposed pursuant to the statute and

17    the guidelines.

18          Excuse me.  One moment.

19          (Judge confers with probation officer.)

20          THE COURT:  There is one correction to paragraph

21    119, and I know this is somewhat of a minor correction, but

22    the fine range should be 30,000 to 300,000.

23          Continuing on.

24          First of all, as far as the nature and circumstances

25    of the offense, there is detailed information regarding the

1    nature and circumstances of the offense found in the

2    presentence report at paragraphs 10 through 28, and the

3    Court will adopt those paragraphs as setting forth the

4    nature and circumstance of the offense.

5         Also in the factual basis of the plea agreement at

6    paragraphs -- or in the plea agreement, I should just say,

7    there is extensive information regarding the nature and

8    circumstances of the offense, and the Court will adopt that

9    information as well.

10         By way of summary, on July 15, 2015, Mr. Al-Ghazi was

11    named in a 28-count indictment.

12         On March 16, 2016, he pleaded guilty to Counts 1, 2,

13    and 3.

14         I've already indicated the nature of the offenses.

15         In short, Mr. Al-Ghazi attempted to provide material

16    support to a designated terrorist organization,

17    specifically, the Islamic State of Iraq and the Levant, also

18    known as ISIL.

19         Starting in approximately June 2014, Mr. Al-Ghazi

20    supported ISIL in online social media.  He pledged his

21    allegiance to ISIL in social media postings and

22    communications with a confidential informant.

23         He made online comments and postings in support of

24    ISIL where he posted ISIL propaganda, made online comments

25    and postings in support of Jihad and violence in the United

1    States, and made statements to the confidential informant in

2    support of ISIL, Jihad, and violence in the United States

3    and discussed recruitment efforts.

4           As far as Counts 2 and 3, Mr. Al-Ghazi was found to

5    possess an AK-47 rifle and a Taurus .45 caliber handgun

6    after having been convicted of offenses which legally made

7    him ineligible to possess such firearms.

8           So any objection to the summary and the nature and

9    circumstances of the offenses?

10                  MR. SHEPHERD:  No, Your Honor.

11                  MR. WHITNEY:  No, Your Honor.  And I hope the

12   Court will forgive us for not standing up.

13                  THE COURT:  No, that's fine.

14                  MR. WHITNEY:  But you're either planning for very

15   thin lead counsel in your next trial --

16                  THE COURT:  We'll need to adjust those tables.

17   My apologies.

18                  MR. WHITNEY:  Sure.

19                  THE COURT:  And I appreciate your letting me know

20   that that needs to be done.

21          As far as the history and characteristics of Mr.

22   Al-Ghazi, he is 41 years old.  He does have a lengthy

23   criminal history that includes drugs, guns, and violence.

24          His criminal history began at the age of 15 with an

25   adjudication of assault as a juvenile.

1          As an adult, he has a number of drug convictions

2    including and in particular drug trafficking convictions.

3          He describes having a rough childhood, indicating that

4    he left home to live on the streets at age 14.

5          He did suffer some abuse which is set forth in the

6    presentence report.

7          He indicates that he gets along well with his parents

8    but that his father was not a big part of his childhood.

9    Instead, he indicates that his stepfather was more of an

10   influence on him than his father.

11         He has five children with three different women.

12         He is married.

13         He has suffered some health problems which are set

14   forth in the report, and he is being treated for those

15   health problems and receives medication.

16         He also has some mental health problems for which he

17   receives some medication and has a long history of abuse of

18   drugs which include a number of different types of drugs.

19         But he did begin smoking marijuana at the age of 13.

20   At different points in his life he used pot or cocaine,

21   heroin, and even abused Percocet and Xanax, to name some of

22   his illegal drugs that he used.

23         He stopped attending high school in the tenth grade

24   but did obtain a GED in 1994.

25         He has had sporadic employment through the years.

1          And with that, any objection to the history and

2     characteristics of Mr. Al-Ghazi as summarized by the Court?

3               MR. SHEPHERD:  No, Your Honor.

4               MR. WHITNEY:  No, Your Honor.  Thank you.

5               THE COURT:  So now we'll come to the point in

6     time where I hear from the parties relative to an

7     appropriate sentence in this case.

8          And I apologize.  I did not have you introduce your

9     client representative.

10              THE AGENT:  Special Agent Ryan Presley with the

11    Cleveland FBI.

12              THE COURT:  Thank you.

13         Mr. Shepherd.

14              MR. SHEPHERD:  Yes, Your Honor.

15         When we take a look at Mr. Al-Ghazi, Your Honor,

16    frankly there is a lot of bad here.  And I start with that

17    to give the Court a little background on where we are today

18    and the recommendation in the plea agreement.

19         First, if we look at Mr. Al-Ghazi's personal

20    characteristics, his criminal history, it's extensive.  He

21    has ten adult criminal convictions, eight of which are F-5's

22    or higher.  Those convictions include multiple drug

23    trafficking, multiple weapons offenses, a domestic violence

24    charge.

25         His employment history is spotty.

1      He has a lengthy history of drug use.

2      And that's all before we even get to this case, Your

3  Honor.

4      So we're starting with somebody with already a lot of

5  marks against him from their prior conduct.

6      And then when we move into the facts and circumstances

7  of this case, this was incredibly serious, what he was

8  engaged in at a time when ISIS had --

9      THE COURT:  Yeah, he took his criminal conduct to

10  a whole new level.

11      MR. SHEPHERD:  I would agree with that, Your

12  Honor.  And at a time when ISIS was sort of exploding on the

13  scene around the world and was putting forth a model of

14  needing recruits in other countries, such as in the United

15  States, and was pushing forth instructions for people in the

16  United States to commit attacks.

17      He was one of those people who was online supporting

18  them, declared his allegiance, which was sort of -- in the

19  manner prescribed by ISIS.  He was using social media to

20  spread their message, influencing countless numbers of

21  people who could find him online.

22      I don't think there is any dispute that he put himself

23  out there as an ISIS supporter and wasn't hiding that.

24      And as part of this case, he was communicating with

25  both just sort of general other ISIS supporters in general

1     but also some confidential informants who were able to

2     report to the government on the things he was saying.

3          And it wasn't just the specific nature of support

4     ISIS, but he was making statements to them about his support

5     for possibly committing attacks in the United States, for

6     building a squad of people in the United States, was a

7     phrase he used, "a squad," discussions of types of conduct

8     they could -- or targets such as, you know, infrastructure

9     facilities or various other potential targets that this

10    squad, if he was able to put it together, could attack.

11         He expressed support for other attacks that had been

12    committed by ISIS around the world.

13         But this wasn't just talk he was engaged in, Your

14    Honor.  And I think that's very important in this case

15    because in addition to engaging in this sort of online

16    campaign, he also took some more concrete steps.

17         One was, although it relates to communications, it's

18    still a more concrete step which was to try and produce his

19    own propaganda videos communicating with someone who is an

20    informant but that he believed was a member of ISIS, a true

21    member of ISIS, directing him on how to help the cause.

22         One of the things he talked about was propaganda

23    videos to recruit others.  And he started that process with

24    recordings and then also trying to collect what he claimed

25    were just props for those recordings, such as his efforts to

1      purchase an AK-47.

2              And I say "he claimed" because it's unclear what

3      ultimately would have happened with what he purchased

4      because ultimately he did purchase an AK-47 rifle from an

5      undercover person, with ammunition.  And at the time of the

6      purchase, there were statements to the effect of purchasing

7      future weapons.

8              And he also had communicated with another associate of

9      his about purchasing weapons from that person which is

10     consistent with the behavior of purchasing weapons and

11     trying to put a squad together.

12             Also disturbing about his activity were his

13     communications with an out-of-state juvenile who was

14     discussing with him the possibility of attacks and getting

15     weapons.

16             And then when he was arrested, they found and searched

17     his house after he bought the AK-47, they found he already

18     had a pistol in his house.

19             He had other indications of support for ISIS,

20     including the flag, a mask, and on his phone when that was

21     searched they found evidence of additional communications

22     and photos and propaganda videos.

23             So he really fit the mold of a danger, of a real ISIS

24     supporter who was a danger to the community at a time when

25     ISIS was sort of blowing up around the world.

1        And that's why we're here, Your Honor, because he took

2   that criminal -- like you said earlier, he took that

3   criminal history and he funneled it towards his support for

4   ISIS.

5        But we're also here, Your Honor, and asking you to

6   follow the plea agreement and the agreement of the 16 years

7   agreed to in the plea agreement because since that time he

8   has taken steps to atone for his actions.

9        He has followed through with the terms of the plea

10  agreement fully.  He has, in meetings with the government,

11  meetings -- I think his attorney would say this -- he has

12  renounced much of the ideology that previously fueled him.

13       He has, as part of the plea agreement, and his

14  testimony has stated that he doesn't -- he doesn't subscribe

15  to that same version of Islam that he did at the time of the

16  conduct in this case.

17       Time will tell whether that is truly what's in his

18  heart, Your Honor.  We can't go there.  We can only judge

19  his actions.  And by following the plea agreement, we

20  believe he has taken significant steps towards showing a

21  level of atonement.

22       So the sentence here takes into account both the

23  support for ISIS, the fact that he was a convicted felon who

24  already had a gun and then obtained another assault rifle

25  and ammunition.

1          It takes into account the seriousness of those

2     actions, because 16 years is a serious sentence for a man of

3     Mr. Al-Ghazi's age.

4          And it takes into account his age, that when he gets

5     out in his 50s, that he likely will be less of a threat just

6     because of his age and hopefully the wisdom he has gained

7     from having spent that time in prison, which is somewhat

8     apparent through the efforts of atonement he's already

9     taken, Your Honor.

10          So that's why we recommend the Court follow the term

11     of 16 years.  We think, as I said, there is a lot of bad.

12     But he has taken some steps to show the good.

13          THE COURT:  And as I understand it, and after

14     having reviewed the transcript, I understand that that

15     atonement to which you're referring to is the testimony in a

16     related case.

17          MR. SHEPHERD:  That's correct, Your Honor, and

18     what he has publicly expressed in that case and that

19     that -- those efforts were important to protecting others,

20     we would say, by helping remove another subject in that

21     related case from, hopefully from a position of being a

22     danger to the public for a long time, Your Honor.

23          So we recognize that, and that's why we're asking the

24     Court to follow the plea agreement.

25          And that's part -- I guess that's the good that, some

1    of the -- on the good side, some of the things he has shown

2    since this case.

3        From our perspective, the government, we always just

4    see really this case and we don't have access to much of

5    what the defense would in terms of really being able to talk

6    extensively with him.  So we're somewhat limited on some of

7    those things, which Mr. Whitney can address, I'm sure.

8        But just from what we've seen in helping protect the

9    public from another defendant, we think that's very

10   important.  And that shows that he has made progress towards

11   not being nearly the danger to the public that he himself

12   once was.

13       And we would also suggest that the Court, in imposing

14   a sentence in this case, also has the option of, in addition

15   to the 16-year sentence that the plea agreement calls for,

16   Your Honor, there is no particular agreement as to

17   supervised release in the agreement.  The maximum period of

18   supervised release is up to life for a conviction on Count

19   1.

20       We would ask the Court to impose a significant period

21   of supervised release so that he can be monitored after he

22   gets out.  And hopefully there aren't any reversions back to

23   that same ideology that the Court would be in a position to

24   address it for a long period of time afterwards to protect

25   the public, Your Honor.  So we would ask for that.

1        We're not asking for a fine, Your Honor.  We don't

2    believe he has the resources.  I know the Court mentioned

3    the change to the PSR.  We would ask the Court not to impose

4    a fine because we don't think he has the resources.

5        So in summary, Your Honor, this defendant was an

6    important part of sort of the overall big picture of ISIS

7    recruiting on social media.  Their model relied on people

8    like him.  It relied on people to go online in the United

9    States to find others who could do their dirty work for

10   them.  And that's deserving of a lengthy sentence.

11       But the efforts he has taken since his arrest in this

12   case we think are worthy of the somewhat lesser sentence

13   than he otherwise would have faced had he not taken those

14   steps.  So that's why we asked for the plea agreement.

15       And we also ask, on just a side note, Your Honor, that

16   there is a forfeiture count for one of the firearms in this

17   case.  So we would ask the Court to order the forfeiture of

18   the firearm and make it a part of the oral and written

19   judgment in this case.

20           THE COURT:  Very well.

21           MR. SHEPHERD:  And Your Honor, we have nothing

22   further.

23           THE COURT:  Thank you, Mr. Shepherd.

24       All right.  Mr. Whitney, anything you wish to say on

25   behalf of your client relative to his sentence in this case?

1          MR. WHITNEY:  Yes, Your Honor.  Thank you.

2          First of all, I would like to thank the government for

3    its words here this afternoon.  I didn't know where Mr.

4    Shepherd was going when he started off by "this is a bad

5    man."  I didn't know where he was actually going to go with

6    that.  But we do know that he was a bad man.  I mean, it's

7    pretty evident in what he did in 2013, '14, and '15.

8          But part of the Court's consideration at sentencing is

9    the history and characteristics of the defendant.  It

10   doesn't limit it to what happened just before the

11   indictment.  And I would like to talk a little bit about

12   that, first of all.

13         But first I would like to talk a little bit about the

14   presentence and some of the things.

15         Judge, when you look at his criminal history -- and

16   I've heard it being described here as being lengthy and bad.

17   But the trafficking counts the Court considered and

18   mentioned were F-5's.  So there is two counts, when we look

19   at the points given him, the 12 points he received in the

20   presentence, they are from F-5's, convictions of

21   trafficking.  One, two -- it looks like three F-5

22   convictions and F-4 trafficking convictions and then a

23   couple of F-3 weapon under disability convictions.

24         And those of us, including this Court, that practice

25   and judged in the common pleas courts know that gives some

1    indication of the level of his trafficking activity when

2    we're talking about F-4's and F-5's.  We're not talking

3    about trafficking in F-1, F-2.

4         So I think that's at least significant, I think, in

5    talking about his criminal history.

6         Secondly, regarding the AK-47, which is a weapon that

7    we all just cringe when we hear about, and we all know about

8    those kinds of weapons -- and I have a summary of the

9    922(g)(1) count in the indictment.  He mentioned to the

10   confidential informant -- and these are paid informants,

11   paid government informants -- that he wanted to purchase an

12   AK-47.  This was in January, I think, of 2015.

13        He was then questioned by the undercover in February,

14   at least one, two, three times about whether or not he was

15   still looking for an AK-47.  And he then -- and defendant

16   said yes.

17        Then in February again, he was asked, do you still

18   want the AK-47, that he knew someone -- and he said he knew

19   someone who would sell him one.

20        Then later on, a month later, he told the informant

21   that he had had this pistol, this .45 caliber, and that he

22   liked the AK-47 with a certain handle on it.

23        And he also -- he told him that in March.

24        Again in April he confirmed his interest in an AK-47

25   with Confidential Informant Number 2, and he wanted bullets.

1      Confirmed his interest in April twice, I think.

2              Again in May.

3              And then in June he talked about having the other gun.

4              And then finally on June 19, he did purchase the AK-47

5      from an undercover FBI employee with money, I think, that

6      was provided to him in a marijuana sale from that very case

7      agent.

8              So I think those are important -- those facts, I

9      think, are relevant here.

10             So where is he now?  And I know all the talk about

11     that post-plea rehabilitation is not grounds for departure.

12     We're not talking about departure here.  We've got a plea

13     agreement.

14             What we're talking about is the Court getting to know,

15     as best it can, what this man is about, what is going on

16     with him; what went on with him and what is going on with

17     him.

18             One of the most important things, he mentioned to me

19     when I saw him last week that somebody at CCA would write

20     him a letter.  That's uncommon in my experience.

21             So apparently Latosia Austin, his unit manager, and

22     Christopher LaRose, who is a warden, they both signed a

23     letter.  "To whom it may concern.  I'm writing this in

24     reference to Amir Al-Ghazi.  First and foremost, he is a

25     very respectful and hardworking individual.  His help has

1    been a full benefit during his incarceration in our

2    facility.  He has done everything in his power to better

3    himself and be productive during his stay in our facility.

4    His admission date to Northeast Ohio Correctional Center is

5    June 24, 2015.  He has been here almost three years, and he

6    has remained free of any disciplinary action.  He has

7    maintained clear conduct."

8         Now, I don't know how many letters you get -- I've

9    tried to get letters before for clients, and I'm unable to

10   do so, let alone a letter like this that said he has been

11   free from any disciplinary action and maintained clear

12   conduct.  I think that tells us something, a little bit

13   about what he is right now.

14        I have spent a great deal of time with him, Judge,

15   over the last year and a half, two years, however long it's

16   been, and have come to know him very well, I think, and he

17   probably me.

18        These kinds of cases that are this serious

19   always -- you seem to have to spend more time with clients

20   than you do most other cases.

21        And I hear talk from him about how he has changed, how

22   dangerous this was, what he did before, and how being a true

23   Muslim has nothing to do with violence.  I've heard him talk

24   about this for years, a year and a half.

25        And you wonder, does he mean that or not?  I mean,

1    that is, I think, important for this Court to consider.

2            I think he does.  And the reason why I think he does

3    is if you look at -- what I did is I made a timeline -- and

4    I did this before; I just reviewed it last night and this

5    morning -- of what we know about his radicalization because

6    we have documents.  We have his writing.  We have his

7    conversations that the government has recorded, his

8    surveillance since January, I think, of 2013, leading all

9    the way up to the day of his arrest.

10           And if you look at that, you could see the

11   metamorphosis that he went through.  You could see -- he

12   says that in the beginning he was, when he started talking

13   with people, basically comes from the penitentiary system

14   about being a Muslim.  And he talks about violence and

15   America's position and ISIS and all of these kinds of

16   things.  He was ambivalent about what it all was, what it

17   all meant.

18           And you can see in early 2013 he was jumping on the

19   Internet and liking and things like commenting on images

20   that he saw.

21           And one of his comments was "I sincerely believe in

22   what I say, and believe me, my comments are not without

23   research."

24           "The Muslims are defending their land."

25           And that's the kind of discussion that he would

1    re-tweet or like.

2         And it was probably free speech at that point in '13.

3    You could see that these, when you look at the

4    conversations, he's kind of ambivalent about where he is.

5    And the government even talks about he espouses extreme

6    Sunni outlooks.

7         In the opinion of the CHS, that's the informant, an

8    American-based Muslim -- he is an American-based Muslim, and

9    this is in 2013 -- who espouses such a diametric outlook is

10   concerning, surprising, and makes the subject in a small

11   majority within the Sunni Islam population of the United

12   States.

13        He's concerned about the subject.  But he was unable

14   to assess or identify clear indicators of militancy.

15        So you can see -- that's in '13.

16        Then he starts posting pictures.  He starts -- he

17   wanted -- he posts later in 2013.  He had to figure out how

18   to best contribute.  He wanted to learn more.  He didn't

19   know his own strong suit.  Those are the kinds of things

20   he's posting.

21        And then, for instance, in July of 2013 the informant

22   says he has no knowledge of Robert McCollum conducting any

23   illegal activity.

24        But then it starts.  The next year he's still posting

25   things.  He's liking things.  He's reading.  He is a very

1  intelligent man in a lot of ways.  He's reading.  In his

2  words he's reading and trying to educate himself.

3         THE COURT:  And I think he was actually taught

4  by, or educated, if you will, by someone in the institution

5  at some point.

6         MR. WHITNEY:  Right.  And then when he gets out,

7  he was asked, how did you get to that point.  He said,

8  through ignorance and a lack of sobriety.

9      So he's doing this when he's using drugs and he's

10  looking for something.

11      They make a comment in November '13:  A further review

12  did not reveal any posts, images, or other items that were

13  indicative of an espousal of extremist ideologies.

14  Moreover, a significant amount of these would appear to be

15  mainstream with Islamic subject matter with an emphasis on

16  topics related to marriage.

17      So then he continues to share and like.

18      Then we talk about victory.  Then we talk about the

19  mujahideen.  We talk about Jihad.  And then he starts

20  posting YouTube videos that exhibit extremist ideology in

21  2014.

22      And you could just see what's happening.  And I think,

23  when I looked at the 2014, you could just see what was

24  happening to him through the months.

25         THE COURT:  That's the radicalization.

1          MR. WHITNEY:  Radicalization.  I mean, up to the

2     point -- I think he reached the pinnacle when he was

3     arrested in June of 2015.  That's when he discussed this,

4     right around this time, making these videos and trying to

5     figure out what to do.

6          So now, since that time, since June -- and so I guess

7     what I'm saying is that corroborates what he has told me and

8     what he has in a public area, what he has said publicly

9     about what happened to him and how it happened to him.

10         So he has been very -- so the evidence that the

11    government produced corroborates what he said and how it

12    happened to him and what he did.

13         And so I think we have to take him on -- take him on

14    his word right now.  I see no reason why we can't take him

15    on his word given his conduct in the institution, given what

16    he has said, and what he has done, what he has done in this

17    case.  I think we have to take him on his word because I

18    think he means what he says.

19         He now feels -- he is a Muslim.  He feels that he was

20    misled, that he listened to a -- listened and incorporated

21    into his life a version of his faith that was not founded in

22    the true beliefs of that, and that he's very, very sorry for

23    that.  And he has expressed sorrow to me and will express

24    sorrow to you in a couple minutes about that he has done

25    what he can do to redeem himself, redeem his name.

1      He's very upset about looking the name "Amir Al-Ghazi"

2   up on the Internet, and all you see is what's happening here

3   today.  You don't see anything about a man who is religious,

4   a man who has children, who wants to teach his children the

5   true things about life, who is trying to get to heaven,

6   frankly, in the right way.

7      So I think that all of that, what we gathered in the

8   case, and the evidence in the case indicates that we need to

9   take him by his word.  And I think he truly means what he

10  says now.  And I think that he has shown a great deal of

11  remorse for what he has done.  And I think -- and he has

12  talked about continuing on in the penitentiary system trying

13  to teach others that same thing.  And I think he will.

14     And so I would ask the Court to take all this into

15  consideration when it decides what sentence to impose in

16  this case.

17          THE COURT:  And by the way, you're right.  Under

18  the variance, there is no provision for the rehabilitation,

19  but there is a provision under the 3553(a) factors for

20  presentence rehabilitation.

21          MR. WHITNEY:  Right.

22          THE COURT:  That the Court can consider.

23     But in any event, thank you, Mr. Whitney.

24     Now we move to Mr. Al-Ghazi.  This is your sentencing

25  hearing, and at this hearing you are permitted to address

1     the Court in mitigation of your sentence in this case.  And
2     if you wish to address the Court, you may stand and do so
3     now.
4            I'll ask that you make sure you speak into your
5     microphone.
6            THE DEFENDANT:  Thank you, Your Honor.
7            First I would like to thank my lawyer, Special Agent
8     Presley, and Matt Shepherd, my prosecutor, for the diligence
9     that they performed in my case.
10           That being said, when you hear these things about you
11    read from a piece of paper and you see and you hear how bad
12    they are, you know -- and I can hear the tone in the
13    courtroom.  I, as well, don't like ISIS.  There was a time
14    when I was confused about things.
15           As you said, my education I received from a man in
16    prison who I later found out to be a rapist and a murderer
17    who already had issues with authority and who was,
18    unbeknownst to me, preparing us for what he thought were
19    going to be his soldiers, I guess.  That's just my
20    estimation of it.
21           I was released from prison before that education was
22    completed, if he ever planned on completing it.
23           With that being said, I come home to the Arab Spring.
24    I come home to the Islamic State.  I believed that being
25    loyal to my religion meant following the hadith or the

1    narrations that I was shown.

2        When you are using drugs, or recovering from using

3    drugs, because I was going through both at this stage and

4    during this time period, you -- and heroin is a

5    mood-altering drug.  I don't know if anyone knows this,

6    but -- and idle hands are the devil's playground -- there

7    was a time when all I did was sit and type and look on the

8    Internet.

9        I asked an imam about the subject of jihad, and he

10   didn't answer me back.

11       There is only one way to fight this ideology, and that

12   is with education.  You can't fight it with bullets and

13   guns.  You can't fight it with prison.

14       If someone had told me and sent me that and educated

15   me about what jihad or what al-Ala or ibadah was at that

16   time, we wouldn't be here now.

17       The only reason why my outlook changed was because I

18   educated myself, and I was educated by Muslims who knew

19   better than me once I got to CCA.

20

21       Any time you have a group of people who are willing to

22   kill everyone who does not agree with them, sounds a lot

23   like Hitler, doesn't it.  That's not religion.

24       Islam says to enjoy the good and forbid wrong.  I

25   found out as a Muslim it is my duty to protect my neighbor

1   whether you're Muslim or not.  This is not what the Islamic

2   State preaches.  And this is not the true Islamic State.

3        Right now you have the -- he mentioned the flag.  The

4   flag has been vilified by all these terror groups.  It is

5   not ISIS's flag.  ISIS does not have a monopoly on this

6   flag.  It is the same flag that the prophet -- peace be upon

7   him -- waved 1,439 years ago.

8        Unfortunately, you have all of these terrorist

9   extremist groups who are highjacking the religion.  I didn't

10  know that then.  Three and a half years ago, a culmination

11  of my anger, my inebriation, and my ignorance cultivated

12  what we have here today.

13       I vehemently regret, retract, and rescind any

14  affiliation with any and all terror groups, namely the

15  Islamic State.  My job as a Muslim is to be as honest and

16  transparent as possible.

17       And if there is any indication of what I have done, I

18  would like for what transpires here to be an incentive for

19  someone after me so that they can follow my lead.

20       I was asked by someone to go down to Texas and train,

21  and I told him no after so-called giving a pledge of

22  allegiance to ISIS.

23       Now, there were times when I re-tweeted and

24  regurgitated things that I heard.  And there are some things

25  that I may disagree about, the meaning may be about what the

1    prosecution says.  But in essence, the prosecution has his

2    facts together.  The reason behind that I may not agree

3    with, but at the end of the day, I signed the plea and I

4    agree that this is what it is.

5         I don't think I need 16 years to think about it.  But

6    that's my opinion.  I would hope and wish that you do

7    monitor me so that you can see for yourself what I will do

8    once this is over or while I'm incarcerated.

9         Judges Adams boasted me with a statement he told while

10   I was in his courtroom.  He said, applauded me on my

11   position and he wanted me -- he wanted to see me turn my

12   life around.  And I will do just that.  I will prove to you,

13   to him, and to the world, and to my family sitting in the

14   back, that this is not -- what you read on paper is not who

15   I am.

16        Unfortunately, it may be who I was at one small point

17   in time.  And yes, my background is -- I wouldn't say

18   lengthy, but it is bad.  I've been in prison -- I was in

19   prison June 19, 2015 to date.  I have been in prison longer

20   than I have ever been in prison in my life.  And that is

21   three years and one day.

22        I don't have a history of violence.  I heard today in

23   this courtroom that I have a history of violence.  I have an

24   assault charge at 15 years old, but I was a kid.  And there

25   is some misdemeanor domestic violence that I don't remember.

1    Albeit that may be true, but I'm not a violent man.  My
2    character is not violent.  Unfortunately, my speech was
3    violent at this time.  And I can do nothing but apologize
4    for that.
5        All I can do now is try to atone for what I did wrong.
6    I personally don't think that sitting in a jail cell will do
7    that, but I will make the best at it.  I respect you, Your
8    Honor.  I respect my prosecutor.  I respect the special
9    agent that arrested me because without you people, if I was
10   crazy or a crazed terrorist, then guess what.  You would
11   have me.  But I'm not.
12       If I was the neighbor next door and I looked at what I
13   was tweeting, I would want someone to say something to that
14   man or do -- you know, so I'm not mad.  This whole situation
15   has been bitter sweet.  The bitter part is I lost my wife
16   and my children.  The sweet part is that I have gained an
17   education.  I am no longer of this state of mind.  Yes, I
18   have time to do.  I have also gained 40 pounds, and I
19   stopped smoking.
20       One day I'll make it home, and I will show you.  You
21   won't forget me.  And you will say, today we did a good
22   thing.  Whatever you decide here, I welcome it because I
23   respect you and I respect your decision.
24       And with that, I'm sorry, and I apologize for whatever
25   I put my society through.

1              Thank you.

2                   THE COURT:   Thank you, Mr. Al-Ghazi.

3         So pursuant to Title 18 United States Code, Section

4    3553(a), when sentencing, the Court is required to impose a

5    sentence sufficient but not greater than necessary to comply

6    with the purposes of sentencing set forth in the sentencing

7    statute.

8         And in determining a sentence, the Court is required

9    to consider the applicable factors set forth in the

10   sentencing statute, many of which we have already

11   considered.

12        We have already considered the nature and

13   circumstances of the offense.

14        We have considered the history and characteristics of

15   Mr. Al-Ghazi both before and after he committed the

16   offenses.

17        And the Court has reviewed the types of sentences

18   available and of course is mindful of the other sentencing

19   factors.  And so we have now to determine the sentence and

20   the need for the sentence imposed.

21        And as I said before, we have Mr. Al-Ghazi who is 41

22   years old.  He has been involved in the criminal justice

23   system since the age of 15.

24        Since that time he has amassed a lengthy criminal

25   history.  And even without the adjustment in this case for

1    the type of offense, that is, the victim adjustment for

2    terrorism classification offense, he would have scored at a

3    criminal history category of V.

4        He has had a range of sanctions and penalties starting

5    as a juvenile with being required to attend -- to attend job

6    corps, and as adult, probation, and incarceration.

7        And unfortunately, none of these sanctions deterred

8    him from engaging in the criminal conduct in which he

9    engaged in, in this case.  And that is the criminal conduct

10   that brought him here today.

11       So as Mr. Shepherd indicated, his past record suggests

12   that he is -- at least at some point in time was very much a

13   danger to the community.  And I believe the prosecutor

14   indicated that his past record was a lot of bad.

15       And the conduct in this case was serious in that he,

16   at least on social media, expressed a willingness to engage

17   in recruitment efforts and to wage jihad on kuffar, to

18   nonbelievers, and he did take some action to affect this

19   willingness.  That he would help and become involved with

20   the juvenile in his efforts is even more alarming.

21       That said, as Mr. Shepherd and Mr. Whitney and as Mr.

22   Al-Ghazi himself have underscored for the Court today, by

23   his more recent actions he has demonstrated that he has

24   recognized the wrongfulness of his conduct and, as the

25   government points out, his testimony was important to

1      helping to protect others, to helping to protect the public

2      from others who would have joined in efforts to recruit and

3      to wage jihad on nonbelievers and to attack targets in the

4      United States.

5           And it does take a certain type of metamorphosis, I

6      believe Mr. Whitney referred to, but a change deep from with

7      inside to come to the realization that what one has done is

8      wrong and requires the individual to atone, not only to just

9      express remorse but actually to take action on it.  And he

10     has taken action on it.

11          So in considering all of the sentencing factors the

12     Court is required to consider, and in particular in order to

13     reflect the seriousness of the offense and Mr. Al-Ghazi's

14     involvement in the offense, to promote respect for the law,

15     to provide just punishment, and also, though, to recognize

16     that, as the assistant United States attorney indicated, he

17     followed the plea agreement.  He has renounced much of the

18     ideology that fueled his conduct.  And his actions in doing

19     so now speak volumes.

20          The Court finds that the Rule 11(c)(1)(C) agreed-upon

21     sentence of 192 months is sufficient in this case and not

22     greater than necessary to comply with the purposes of

23     sentencing set forth in the sentencing statute.

24          So pursuant to the Sentencing Reform Act of 1984 and

25     Title 18 United States Code, Section 3553(a), it is the

1    judgment of the Court that the defendant, Amir Said Rahman

2    Al-Ghazi, aka Robert C. McCollum, is hereby committed to the

3    custody of the Bureau of Prisons to be imprisoned for a term

4    of 192 months on Count 1 and terms of 120 months as to each

5    of Counts 2 and 3, all terms to be served concurrently with

6    each other, which of course would be an aggregate term of

7    192 months.

8         Mr. Whitney, is there a recommendation that you would

9    like the Court to make relative to placement?

10         MR. WHITNEY:  Yes, Your Honor.

11         We would request the Court recommend the institution

12    in Fairton, New Jersey.

13         THE COURT:  The Court will make that

14    recommendation.

15         Are there any trades programs you would like to be

16    involved in?

17         THE DEFENDANT:  Yes.  I would like the RDAP

18    program.  I would like the barber program.  I would like --

19         THE COURT:  Wait a minute.  You've got to speak

20    more slowly.  The barber --

21         THE DEFENDANT:  The barber program, the CDL -- I

22    think they have a CDL.

23         THE COURT:  Okay.  The barber -- so I will

24    recommend that you be permitted to participate in trades

25    programs and in particular the barber program and the CDL

1  program.  Okay.

2           THE DEFENDANT:  The RDAP.

3           THE COURT:  And then you would like a

4  recommendation to the RDAP program as well.

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  I will make that.

7           MR. WHITNEY:  Your Honor, also he has almost

8  three years of pretrial confinement.

9           THE COURT:  Right.  Do we have an exact date?

10          THE DEFENDANT:  June 19.

11          MR. WHITNEY:  June 19, 2015.

12          MR. SHEPHERD:  That's correct.  That's when he

13  was originally arrested in this case, Your Honor.  He has

14  been in only federal custody ever since.

15          THE COURT:  All right.  So credit for time served

16  since June 19, 2015, since he was in solely federal custody

17  on this case.

18          Upon release from imprisonment, Mr. Al-Ghazi shall be

19  placed on supervised release for a term of eight years as to

20  Count 1 and three years as to each of Counts 2 and 3, all

21  terms to run concurrently.

22          Mr. Al-Ghazi, I would suggest to you that if in fact

23  you stay true to what you've represented to this Court, that

24  you ask to participate in the Court's reentry program upon

25  your release.  Your attorney will explain a little bit about

1    that.  And if in fact you have continued your path of

2    atonement and you really have changed, that program will

3    benefit you as you serve your supervised release.

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Within 72 hours of release from the

6    custody of the Bureau of Prisons, you shall report in person

7    to the United States Pretrial and Probation Office in the

8    sentencing district or in the district to which you are

9    released.

10         Based upon a review of your financial condition, the

11   Court is going to waive a fine in this case.

12         You shall pay the United States a special assessment

13   of $300 which is due and payable immediately.

14         While on supervision, you shall not commit another

15   federal, state, or local crime.

16         You shall not illegally possess a controlled

17   substance.

18         You shall comply with the standard conditions that

19   have been adopted by this Court, and you shall comply with

20   the following additional conditions:

21         You shall refrain from any unlawful use of a

22   controlled substance and submit to one drug test within 15

23   days of the commencement of supervision and to at least two

24   periodic drug tests thereafter as determined by the United

25   States Pretrial Services and Probation Office.

1          You shall not possess a firearm, destructive device,

2     or any dangerous weapon.

3          You shall provide the United States Pretrial Services

4     and Probation Office with access to any requested financial

5     information.

6          You shall participate in an approved program of

7     substance abuse testing and/or outpatient or inpatient

8     substance abuse treatment as directed by your supervising

9     officer and abide by the rules of the treatment program.

10         You shall not obstruct or attempt to obstruct or

11    tamper in any fashion with the efficiency and accuracy of

12    any prohibited substance testing.

13         You shall participate in a cognitive behavioral

14    treatment program as instructed by your probation officer.

15         And you shall undergo a mental health evaluation

16    and/or participate in a mental health treatment program as

17    directed by your supervising officer.

18         And you shall cooperate in the collection of DNA as

19    directed by your United States pretrial services and

20    probation officer.

21         You shall submit your person, residence, place of

22    business, computer or vehicle to a warrantless search

23    conducted and controlled by the probation officer at a

24    reasonable time and in a reasonable manner based upon

25    reasonable suspicion of contraband or evidence of a

1    violation of a condition of release.

2         Failure to submit to a search may be grounds for

3    revocation.  You shall inform any other residents that the

4    premises may be subject to a search pursuant to this

5    condition.

6         You shall forfeit your interest in the following

7    property to the United States:  A Taurus .45 caliber

8    handgun, model PT 24/7 PRO DS, serial number NDM25686.

9         Is that the item to be forfeited to which you were

10   referring earlier?

11             MR. SHEPHERD:  Yes, Your Honor.

12             THE COURT:  Okay.  And with that, I just want to

13   make one comment.  I know this was a minor point, but I will

14   ask the probation officer to give the accurate -- or make

15   the accurate adjustment in the presentence report relative

16   to the fine that applied as calculated in the presentence

17   report and make sure my courtroom deputy clerk has that

18   information as well.

19             THE PROBATION OFFICER:  Okay.  Yes, Your Honor.

20             THE COURT:  And with that, any other issues to

21   address relative to the sentence in this case?

22             MR. SHEPHERD:  No, Your Honor.  We have one

23   further motion.

24             THE COURT:  Yeah, prior to the motion.

25             MR. SHEPHERD:  No, Your Honor.

1          THE COURT:  Anything else regarding the sentence?

2          MR. WHITNEY:  No.

3          THE COURT:  Okay.  So I did mention the Reentry

4    Court program.  That is a voluntary program, but you also

5    must be accepted into the program, and you have to meet the

6    guidelines of the program as well.  But nonetheless, I think

7    you should make inquiry, if you choose, and again, that's

8    once you're released.

9          THE DEFENDANT:  Am I available for the RDAP

10   program with a 922(g) charge?

11         THE COURT:  That is something that the Bureau of

12   Prisons will have to decide.  I can make the recommendation

13   based upon your history of drug use, but that is something

14   they will have to make -- they will determine if you

15   actually qualify for the program.

16         THE DEFENDANT:  Thank you.

17         THE COURT:  Certainly.

18      So with that, counsel, do you have any objections or

19   know of any reason why the sentence as stated by the Court

20   should not be imposed?

21         MR. SHEPHERD:  No, Your Honor.

22         MR. WHITNEY:  No, Your Honor.  Thank you.

23         THE COURT:  All right.  Mr. Al-Ghazi, the Court

24   hereby advises you that you can appeal your conviction if

25   you believe that your guilty plea was somehow unlawful or

1    involuntary, or if there is some other fundamental defect in

2    the proceedings that was not waived by your guilty plea.

3           You also have a statutory right to appeal your

4    sentence under certain circumstances, particularly if you

5    think the sentence is contrary to law.

6           If you do not have enough funds to allow you to take

7    an appeal, you have the right to have somebody appointed to

8    represent you in prosecuting an appeal.  And you would have

9    the right to appeal without cost to you.

10          Also, you have the right to apply for leave to appeal

11   in forma pauperis, and in that event the clerk of court will

12   prepare and file a notice of appeal upon your request.

13          Be advised that with few exceptions, any notice of

14   appeal must be filed within 14 days of the entry of this

15   Court's judgment.  And the Court does intend to file its

16   judgment today.  So that will trigger your 14 days for an

17   appeal.

18              THE DEFENDANT:  May I contact you at a later date

19   for reduction of sentence?

20              THE COURT:  That is --

21              THE DEFENDANT:  You're supposed to smile.

22              THE COURT:  Yeah.  This is unlike -- I think you

23   are much too familiar with state court proceedings.  In the

24   Federal Court, there are very limited circumstances in which

25   you could receive a reduced sentence.  And so let me just

1    suggest to you it is most likely unlikely.

2                    THE DEFENDANT:  You're supposed to smile.

3                    THE COURT:  Okay.

4        So do you understand all that I said about your right

5    to appeal?

6                    THE DEFENDANT:  Yes, Your Honor.

7                    THE COURT:  And Mr. Whitney, I trust that if your

8    client wishes to file a notice of appeal, you will assist

9    him?

10                   MR. WHITNEY:  Yes, Your Honor.

11                   THE COURT:  Okay.  Anything further before the

12   Court adjourns?

13                   MR. SHEPHERD:  Yes, Your Honor.  Pursuant to the

14   plea agreement, the government would move to dismiss Counts

15   4 through 28 of the indictment.

16                   THE COURT:  Upon motion of the government, Counts

17   4 through 28 of the indictment are hereby dismissed.

18       And with that, that does conclude this proceeding, and

19   Mr. Al-Ghazi is remanded to the custody of the marshals so

20   that he may be transported to an appropriate institution so

21   that he may serve his sentence in this case.

22                   THE DEPUTY CLERK:  All rise.

23       (Proceedings concluded at 2:30 p.m.)

24

25

1                        C E R T I F I C A T E

2

3              I certify that the forgoing is a correct

4      transcript from the record of proceedings in the

5      above-entitled matter.

6

7              S/Caroline Mahnke              8/30/2018

8              Caroline Mahnke, RMR, CRR, CRC        Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25